FINDINGS OF FACT.

The decedent upon his death was the owner of 200 shares of stock of Cosden & Co., which subsequently were exchanged for ten shares of new stock upon a reorganization of that company. The said 200 shares owned by the decedent had a fair market value on the date of the decedent's death of $1,072.50.

The executor, in connection with the administration of the estate, was entitled to receive, and in his final accounting filed with the Orphan's Court of the County of Butler, Commonwealth of Pennsylvania, was allowed, fees as said executor in the sum of $12,500, and said fees were paid prior to the date of hearing in this appeal. In the aforesaid accounting as executor, there was allowed on account of attorneys' fees the sum of $25,000, of which $2,000 was paid prior to the hearing of this appeal, and $23,000 was then due and payable by the taxpayer to the said attorneys.

In the aforesaid accounting there was also allowed to M. Cumming, as accountant, in connection with work in the affairs of the said estate, the sum of $3,800, all of which sum was paid prior to the hearing in this appeal.

All of the above-mentioned amounts were excluded by the Commissioner in the determination of the deficiency from which this appeal was taken, and the Commissioner, in addition, through an error in the taxpayer's return, included in the gross estate the above-mentioned Cosden & Co. stock at a valuation of $21,450.

DECISION.

The deficiency should be recomputed by allowing the taxpayer a deduction on account of executor's fees in the sum of $12,500: a deduction on account of attorneys' fees in the sum of $25,000; a deduction on account of accountant's fee of $3,800; and a deduction from the value of the gross estate in respect of the overvaluation on account of the stock of Cosden & Co., of $20,377.50. The final deficiency will be settled upon ten days' notice, in accordance with Rule 50.

---

**Appeal of F. F. WOOD MOTOR CO.**        **Docket No. 1668.**

Submitted April 3, 1925; decided April 25, 1925.

*Ward Loveless, Esq.*, for the Commissioner.

Before IVINS and MARQUETTE.

This appeal came on for hearing on March 26, 1925, upon the pleadings. The taxes in controversy are income and profits taxes for 1919, 1920, and 1921, and are less than $10,000. Upon the pleadings the Board adopts the following findings of fact submitted by counsel for the Commissioner:

FINDINGS OF FACT.

1. That the taxpayer was, during the years 1919, 1920, and 1921, a corporation engaged in business in Grand Rapids, Mich.

2. That it was engaged in the purchase and sale of automobiles, automobile accessories, etc.

3. That in its business it followed the practice of accepting second-hand cars as partial payment of the sales price of new automobiles which it sold.

4. That on December 31, 1918, 1919, 1920, and 1921, respectively, it inventoried its cars, including the second-hand cars, upon the regular established method of inventorying, which appears to have been cost.

5. That on its original returns for the years 1919, 1920, and 1921, it claimed no adjustment on account of "unearned profit reposing in used car inventory."

6. That subsequently to the filing of the original returns, it caused an examination to be made of its books and records, after which it set up and claimed as deductions on amended returns certain amounts designated by it as "unearned profit reposing in used car inventory."

7. That the amounts were computed by the taxpayer in the following manner:

The sum represented by the amount in the used car inventory at the close of each year plus the cost of used cars sold is divided by the sum represented by the sale price of new cars sold, plus sale price of used cars sold. The quotient thus arrived at represents the percentage of gross profit earned on new cars which have been sold on which used cars have been received as part payment. Gross profit is determined by subtracting the sum represented by the cost of new cars sold plus cost of used cars sold from the sum represented by the sale price of new cars sold plus sale price of used cars sold. The percentage of gross profit earned applied to gross profit represents the amount of gross profit earned. Total gross profit minus this amount represents the amount of gross profit unearned and for the sake of convenience has been labeled "Skeleton Reserve." The percentage of this skeleton reserve to total sales of new cars is then determined and this percentage is applied to overhead expense. The amount obtained is then added to the skeleton reserve and the sum is the completed reserve for rediscounts which represents that portion of profit on sales of new cars which has not yet been earned. The entry is made by a debit of sales of new cars and a credit to reserve for rediscounts and the entry is reversed in the following year.

8. That the Commissioner disallowed all deductions for "unearned profit reposing in used car inventory."

9. That on October 15, 1921, the taxpayer purchased certain real property from the Grand Rapids Land Contract Co.

10. That the consideration expressed in the contract was $123,-160.

11. That the taxpayer set up the property purchased on its books and records at $108,000.

12. That the remaining $15,160 was set up to be amortized as financing charges, for the reason that the Grand Rapids Land Contract Co. sold the bonds which were secured by a mortgage on the land purchased by the taxpayer at a discount of $15,160. The taxpayer was not the obligor under the bonds.

13. That the Commissioner disallowed the deduction claimed by the taxpayer as amortization on this account and restored the $15,-160 to the asset account in which the real property purchased by the taxpayer was carried; and

14. That the taxpayer filed amended returns for 1919, 1920, and 1921, in which depreciation of $1,404.35, $2,080.21, and $4,433.31, respectively, was claimed. The Commissioner in his audit allowed as a deduction from the gross incomes of 1919, 1920, and 1921, re-

spectively, the amounts of $1,583.14, $2,122.87, and $3,426.07. No evidence has been introduced by the taxpayer.

### DECISION.

The determination of the Commissioner is approved.

---

Appeal of **MARY CLARK KLING.**                    Docket No. 1495.

The amount of the normal tax paid by a debtor corporation on bonds containing a tax-free covenant clause is not a part of the taxable income required to be included in the bondholder's income-tax return under the provisions of the Revenue Act of 1918.

Submitted March 14, 1925; decided April 27, 1925.

*Addison S. Pratt, Esq.*, for the taxpayer.
*Robert A. Littleton, Esq.*, for the Commissioner.

·  Before GRAUPNER, LITTLETON, and SMITH.

This appeal is from a deficiency in income tax for the year 1920 of $424.91. The question in issue is whether the amount of the normal tax paid by a debtor corporation on bonds containing a tax-free covenant clause is a part of the taxable income required to be included in the income-tax return of the bondholder.

### FINDINGS OF FACT.

In her income-tax return for 1920 the taxpayer included as a part of her taxable income $2,640, the amount of the normal tax at 2 per cent paid by a debtor corporation on tax-free covenant bonds to the collector of internal revenue under the provisions of section 221(b) of the Revenue Act of 1918. In an audit of the return, the Commissioner made certain adjustments therein which operated to increase the net income by the amount of $503.69. These adjustments in no wise affected the item of $2,640 returned as a part of the taxable income by the taxpayer in her original return. The taxpayer now claims that the $2,640 was returned in error. If this amount is excluded from gross income there was no deficiency in income tax for the year 1920.

### DECISION.

The deficiency determined by the Commissioner is disallowed.

### OPINION.

SMITH: This appeal presents two questions for determination: (1) Whether the Board has jurisdiction of an appeal in which the taxpayer does not take exception to the adjustments in the taxpayer's income-tax return made by the Commissioner but sets up as an offset thereto an alleged error in the original return not corrected by the Commissioner in the making of his adjustments; and (2) whether a taxpayer is required to include in the gross income shown in a tax